1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAQUITTA ANN CAUDEL,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____ | Case No.: 1:19-cv-1255 JLT<br><br>ORDER GRANTING PLAINTIFF'S APPEAL (DOC. 22) AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF LAQUITTA ANN CAUDEL AND AGAINST DEFENDANT ANDREW SAUL, THE COMMISSIONER OF SOCIAL SECURITY |

Laquitta Ann Caudel asserts she is entitled to disability insurance benefits and a period of disability under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record and her statements regarding the severity of her symptoms. For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

In March 2016, Plaintiff filed an application for benefits, alleging she became disabled in July 2015 due to left knee injury, right knee pain, "right hip and groin pain and spasms," headaches, "low and mid back pain," and neck pain. (Doc. 14-4 at 3-4) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See* Doc. 14-4) Plaintiff requested an administrative hearing on the application and testified before an ALJ on April 4, 2018. (*See* Doc. 14-3

at 26, 43)  The ALJ found Plaintiff was not disabled and issued an order denying benefits on July 30, 2018.  (*Id.* at 26-36)  Plaintiff requested review of the ALJ's decision with the Appeals Council, which denied the request on May 7, 2019.  (*Id.* at 12-14)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

2

1    the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

2    gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

3    **ADMINISTRATIVE DETERMINATION**

4    To achieve uniform decisions, the Commissioner established a sequential five-step process for

5    evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process

6    requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had

7    medically determinable severe impairments (3) that met or equaled one of the listed impairments set

8    forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional

9    capacity to perform to past relevant work or (5) the ability to perform other work existing in significant

10   numbers at the state and national level.  *Id.*

11   Pursuant to this five-step process, the ALJ determined Plaintiff had "not engaged in substantial

12   gainful activity since July 31, 2015, the alleged onset date."  (Doc. 14-3 at 28)  Second, the ALJ found

13   Plaintiff's severe impairments included: "degenerative disc disease and status-post bilateral total knee

14   replacement."  (*Id.*)  At step three, the ALJ determined Plaintiff's impairments did not meet or

15   medically equal a Listing.  (*Id.*)  Next, the ALJ found:

16   [T]he claimant has the residual functional capacity to lift and/or carry 20 pounds
     occasionally and 10 pounds frequently. She could sit 6 hours in an 8-hour workday

17   with normal breaks.  She could stand and/or walk 6 hours in an 8-hour workday with
     normal breaks.  This capacity most closely approximates light work as defined in 20

18   CFR 404.1567(b) except she could occasionally push or pull with bilateral lower
     extremities.  She could occasionally climb ramps or stairs, but never climb ladders,

19   ropes, or scaffolds.  She cannot work at unprotected heights.  She could occasionally
     balance, stoop, kneel, crouch, or crawl.

20

21   (*Id.* at 29)  With this residual functional capacity, the ALJ determined at step four that Plaintiff "was

22   capable of performing past relevant work as a General Clerk and Customer Service Clerk."  (*Id.* at 35)

23   Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 36)

24   **DISCUSSION AND ANALYSIS**

25   Plaintiff argues the ALJ erred in evaluating the medical evidence, including the opinion of her

26   treating chiropractor and an examining physician.  (Doc. 22 at 22-30)  In addition, Plaintiff asserts the

27   ALJ erred in rejecting her subjective statements.  (*Id.* at 30-34)  The Commissioner argues that the ALJ

28   properly evaluated the medical evidence and the statement from Plaintiff's chiropractor.  (Doc. 23 at 4-

10)  The Commissioner also asserts that "the ALJ reasonably concluded the record did not adequately support Plaintiff's allegations of disabling symptoms and limitations and set forth specific and legitimate supported by substantial evidence." (*Id.* at 10-11)

**A.      Evaluation of Plaintiff's Subjective Statements**

Plaintiff testified that she had total knee replacements on both knees about a year prior to the hearing. (Doc. 14-3 at 52, 54)  In addition, she reported she suffered from back pain. (*Id.* at 52-53) Plaintiff stated she began seeing a chiropractor following an injury in 2015. (*Id.* at 63) She reported that she did "about 30 minutes of stretching a day" for her knees and back. (Doc. 14-3 at 55)  Plaintiff stated she elevated her feet each evening, and put ice on her knees for twenty minutes because they would swell. (*Id.* at 53-54)  In addition, testified that she had to elevate her legs for her knee pain and swelling "[m]aybe three times a week" during the day. (*Id.* at 59-60)  Plaintiff stated she would "take ibuprofen usually in the evening time because she… [had] a hard time sleeping at night" due to back pain. (*Id.* at 55)

Plaintiff said she was able to do some activities around the house, such as making a bed and "some cooking," but her daughter did chores such as vacuuming, cleaning bathrooms, and laundry. (Doc. 14-3 at 53, 56)  Plaintiff reported she could stand or stand for "about 30 minutes" before she needed to change positions. (*Id.* at 53)  She explained she would "try to get up and move every 30 minutes," alternating between sitting and standing throughout the day. (*Id.*)  She stated that after her surgery, she was told to "not sit more than hour" and if she sat for more than 30 minutes at a time it "was hard to get up… and walk." (*Id.* at 58-59)

She testified that she could no longer lift or walk with her three-year-old grandson. (Doc. 14-3 at 46, 57)  Plaintiff explained she could not lift her grandson from a standing position, and was "always in a seated position… [to] pick him up." (*Id.* at 57, 62)  Plaintiff estimated that in a standing position, she could lift and carry "maybe 15 pounds" without hurting herself. (*Id.* at 62)

1.      Standards for reviewing a claimant's statements

In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504

F.3d 1028, 1035-36 (9th Cir. 2007) (citation omitted).  Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting her subjective complaints.  *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).  The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403).  Further, an ALJ must identify "specific reasons for the weight given to the individual's symptoms," in a manner such that the claimant "and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  Social Security Ruling[1] 16-3p, 2017 WL 5180304 (2017); *see also Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004) (findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony").

An ALJ may consider several other factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

---

[1] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). The Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1          2.      The ALJ's analysis of Plaintiff's statements

2          The ALJ determined "medically determinable impairments could reasonably be expected to

3   cause some of the alleged symptoms."  (Doc. 14-3 at 30)  However, the ALJ found Plaintiff's

4   "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

5   consistent with the medical evidence and other evidence in the record..."  (*Id.*) To support these

6   conclusions, the ALJ summarized the record and medical pinions related to Plaintiff's impairments.

7   (*Id.* at 30-32)  The ALJ then stated:

8          Based on my review of the entire record and the hearing testimony, I conclude the
           claimant's subjective allegations of debilitating pain and limitation precluding all
9          work activity are not supported by the objective evidence.  Her testimony at the
           hearing was not persuasive or consistent with the objective evidence.  Her activities
10         of daily living are not consistent with one who suffers such severe limitations as to
           preclude all work activity.  Finally, some of her alleged impairments have been
11         responsive to treatment and do not impose a disabling degree of limitation.

12  (*Id.* at 35)

13         Plaintiff argues "[t]he ALJ failed to provide the 'clear and convincing' reasons for rejecting"

14  her testimony "regarding her significantly limited ability to sit, stand and walk."  (Doc. 22 at 30)

15  Instead, Plaintiff asserts that "the ALJ incorporates vague and conclusory stock language."  (*Id.* at 32)

16  On the other hand, the Commissioner argues that "the ALJ properly weighed Plaintiff's subjective

17  claims."  (Doc. 23 at 10, emphasis omitted)

18         a.      Summary of the medical record

19         In general, "conflicts between a [claimant's] testimony of subjective complaints and the

20  objective medical evidence in the record" can constitute "specific and substantial reasons that

21  undermine … credibility."  *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999).

22  However, as the Ninth Circuit explained, "summariz[ing] the medical evidence supporting [the] RFC

23  determination... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in

24  order to ... ensure that the claimant's testimony was not arbitrarily discredited."  *See, e.g., Brown-*

25  *Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  As a result, "the observations an ALJ makes as

26  part of the summary of the medical record are not sufficient to establish clear and convincing reasons

27  for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 U.S. Dist. LEXIS 102007 at *44 (E.D.

28  Cal. Aug. 3, 2016).

6

1    Importantly, the Court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*,

2    806 F.3d at 494 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003))  In *Brown-Hunter*,

3    the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom

4    testimony.  *Id.*, 806 F. 3d at 491.  The district court identified inconsistencies in the ALJ's summary of

5    the medical record that it gave rise to reasonable inferences about Plaintiff's credibility.  *Id.*  On appeal,

6    the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible and did not

7    link that testimony to support the adverse credibility determination.  *Id.* at 493.  The Court explained

8    that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure.  *Id.* at

9    494.

10    Recently, the Ninth Circuit determined an ALJ erred when discrediting symptom testimony as

11    "not entirely consistent with the medical evidence," without linking the testimony and medical

12    evidence.  *Holcomb v. Saul*, 832 Fed. App'x. 505, 506 (9th Cir. Dec. 28, 2020). The Court observed

13    that while the ALJ summarized the claimant's testimony and "determined that his symptom testimony

14    was not 'entirely consistent with the medical evidence and other evidence in the record.'"  *Id.* at 506.

15    The Court observed that "the ALJ discussed relevant medical evidence but failed to Holcomb's

16    symptom testimony to specific medical records and explain why those medical records contradicted his

17    symptom testimony."  *Id.*  Further, the Court observed that "the ALJ never mentioned Holcomb's

18    symptom testimony while discussing the relevant medical evidence."  *Id.*  Because the Court is

19    constrained to the reviewing reasoning identified by the ALJ for discounting testimony, the Court found

20    the "failure to specific the reasons for discrediting Holcomb's symptom testimony was reversible

21    error."  *Id.* (citing *Brown-Hunter*, 806 F.3d at 494)

22    Likewise, here, the ALJ offered little more than a summary of the medical evidence and

23    boilerplate language to support her rejection of Plaintiff's credibility.  The ALJ summarized Plaintiff's

24    statements at the hearing, and opined that her "statements concerning the intensity, persistence and

25    limiting effects of these symptoms are not entirely consistent with the medical evidence..."  (Doc. 14-3

26    at 30)  Following the summary of the treatment notes and medical opinions in the record, the ALJ

27    concluded Plaintiff's "testimony at the hearing was not persuasive or consistent with the objective

28    evidence."  (*Id.* at 35)  However, the ALJ failed to specifically identify what evidence she believed was

inconsistent with the testimony.  For example, although the ALJ summarized the findings related to images taken of Plaintiff's knee and lumbar spine— including advanced osteoarthritis in both knees and degenerative disc disease—the ALJ has not explained how these findings were inconsistent with the limitations to which Plaintiff testified, including her need to alternate positions.  (*See id.* at 30)  In addition, the ALJ has not explained how the summarized examination findings were inconsistent with Plaintiff's testimony.  (*See id.* at 30-32)

Because the ALJ has not linked her review of the record to Plaintiff's testimony at the hearing, the ALJ's summary of the medical record does not support the decision to reject Plaintiff's subjective statements.  *See Brown-Hunter*, 806 F.3d at 494; *Holcomb*, 832 Fed. App'x. at 506; *see also Coloma v. Comm'r of Soc. Sec.*, 2018 WL 5794517 at *9 (E.D. Cal. Nov. 2, 2018) (finding error where " the ALJ simply cites to medical evidence and the general adequacy of Plaintiff's functioning, without any link to how they conflict with, or undermine, Plaintiff's statements").  Thus, this factor does not support the ALJ's adverse credibility determination.

b.      Activities of daily living

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999), citing *Fair*, 885 F.2d at 603.  For example, a claimant's ability to cook, clean, do laundry and manage finances can support an adverse finding find of credibility.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).  However, an ALJ must make a specific finding relating to the transferability of the activities to a workplace to refute a plaintiff's allegations of disability.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The Ninth Circuit found the ability to "take care of … personal needs, prepare easy meals, do light housework, and shop for some groceries … may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990); *see also Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances...").  The ALJ noted

Plaintiff "able to perform some light chores, cook, drive, and pick up her grandson." (Doc. 14-3 at 35) However, the ALJ failed to acknowledge the difficulty and limitations Plaintiff reported with these tasks. For example, Plaintiff testified she did "some cooking" and could make a bed, but her daughter did other chores such as vacuuming, cleaning bathrooms, and doing the laundry. (*Id.* at 53, 56) In addition, Plaintiff said she could not pick up her grandson from a standing position, and estimated she could only lift and carry "maybe 15 pounds" while standing. (*Id.* at 62)

Importantly, the Ninth Circuit determined the fact a claimant engages in normal daily activities "does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The Court explained, "One does not need to be 'utterly incapacitated' in order to be disabled." *Id.*, quoting *Fair*, 885 F.2d at 603. Rather, an ALJ must determine whether the claimant's activities are transferrable to a workplace. *See, e.g., Stubbs-Danielson*, 539 F.3d at 1175. The ALJ did not make any finding regarding whether Plaintiff's chores were transferable to a workplace and did not find Plaintiff spent a "substantial" part of her day engaged in such activities. *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting). Indeed, the Ninth Circuit opined, "Daily household chores and grocery shopping are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008). Consequently, the limited activities identified by the ALJ do not constitute clear and convincing evidence sufficient to discount Plaintiff's testimony.

c.     Treatment received

In assessing a claimant's statements regarding the severity of her symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c)(iv), 416.929(c)(iv). Further, the Ninth Circuit determined that an "ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the claimant's failure to seek treatment for a three or four month period was "powerful evidence"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe—and the claimant's failure to request—treatment commensurate with the "supposedly excruciating pain" alleged).

The ALJ observed that Plaintiff "underwent bilateral total knee replacement surgery recently with a good surgical outcome," and had "also been noted to do well after a chiropractic adjustment." (Doc. 14-3 at 35) The ALJ noted Plaintiff took ibuprofen for pain and used ice packs on her knees. (*Id.*) According to the ALJ, Plaintiff's "treatment modalities have been conservative and her knee replacement surgeries were very successful." (*Id.*) The ALJ also opined "the weight of the evidence prior to the surgery show[ed] good results with conservative treatment measures and some decreased range of motion in the knees." (*Id.*) The ALJ concluded "some of her alleged impairments have been responsive to treatment and do not impose a disabling degree of limitation." (*Id.*)

Significantly, the ALJ did not identify any evidence in the medical record to support her conclusion that Plaintiff had "good results with conservative treatment" prior to bilateral knee replacement surgery, or any opinion of a physician indicating that Plaintiff responded to the conservative treatment. Indeed, earlier in the decision the ALJ noted: "In a QME report of February 8, 2016, Dr. John Devor noted the claimant received medication and physical therapy for her knee complaints, *both without benefit.*" (Doc. 14-3 at 31, citing Exh. 9F, p. 12 [Doc. 14-21 at 13]) (emphasis added). Further, Plaintiff's knee replacement surgeries occurred during the period adjudicated by the ALJ and were clearly not conservative treatment. *Sanchez v. Colvin*, 2013 WL 1319667, at *4 (C.D. Cal. Mar. 29, 2013) ("surgery and conservative measures are at different ends of the treatment spectrum") (citation omitted). Thus, the Court finds the ALJ failed to identify evidence in the record showing Plaintiff's testimony conflicted with the treatment she received, and this factor does not support the ALJ's decision to reject the limitations identified by Plaintiff.

d.      Failure to identify the testimony being discounted

Finally, the ALJ must identify what testimony from a claimant is not credible. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "*specifically identify what testimony is credible* and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible");

1  *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing'

2  reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not

3  credible and what evidence undermines the claimant's complaints").  Because the ALJ did not carry

4  this burden, the Court finds the ALJ failed to properly set forth findings "sufficiently specific to allow a

5  reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa*

6  *v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

7  **B.    Evaluation of the Medical Evidence**

8        In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating

9  physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-

10  examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830

11  (9th Cir. 1996).  In general, the opinion of a treating physician is afforded the greatest weight.  *Id.*; *see*

12  *also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an

13  examining physician's opinion is given more weight than the opinion of non-examining physician.

14  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

15  Finally, an ALJ must consider opinions of other medical professionals—such as chiropractors—who

16  may offer "judgment about some of the same issues addressed in medical opinions from acceptable

17  medical sources." 20 C.F.R. § 404.1527(f)(1) (2015); *see also Revels v. Berryhill*, 874 F.3d 648, 655

18  (9th Cir. 2017) (describing circumstances when opinions from "other sources" may be considered

19  acceptable medical opinions).[2]

20        An opinion is not binding upon the ALJ and may be discounted whether another physician

21  contradicts it.  *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted* opinion of a

22  treating or examining medical physician only by identifying a "clear and convincing" reason.  *Lester*,

23  81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining physician may be

24  rejected for "specific and legitimate reasons that are supported by substantial evidence in the record."

25  *Id.*, 81 F.3d at 830.  When there is conflicting evidence, "it is the ALJ's role to determine credibility

26

27        [2] The Social Security Administration adopted new rules applicable to claims filed after March 27, 2017, which
28  expanded the category of acceptable medical providers. 20 C.F.R. §§ 404.1502(a)(6), (7), (8); 416.902(a)(6), (7), (8)
(2017); *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). These
revisions do not apply to Plaintiff's claim, which was filed in 2016.

and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff asserts the ALJ erred in rejecting limitations identified by Paul Schroeder (her treating chiropractor) and Dr. John Devor (an examining physician). (Doc. 22 at 22)  Because these opinions were contradicted by the state agency medical consultants—Drs. Wong and Christian (*see* Doc. 14-3 at 32-33) —the ALJ was required to identify specific and legitimate reasons for rejecting the treating physician's opinions.  *See Lester*, 81 F.3d at 831.

### 1.    Opinions of Dr. Paul Schroeder[3]

Paul Schroeder, D.C., completed a "Physical Medical Source Statement" in September 2016, noting that Plaintiff's symptoms included "constant moderate to severe" pain in her left knee, left hip, right hip, low back, and right knee.  (Doc. 14-12 at 29)  He noted Plaintiff's treatment included chiropractic care, surgery, and medication.  (*Id.*)  According to Dr. Schroeder, Plaintiff could walk half a city block without rest or severe pain, sit for up to one hour at a time, and stand for ten minutes at time before needing to sit.  (*Id.*)  He believed Plaintiff needed to be able to shift positions at will and could sit for two hours in an eight-hour day with the "ability to get up [and] stretch."  (*Id.*)  In addition, Dr. Schroeder believed Plaintiff was required to elevate her legs "[w]ith prolonged sitting" and should use a cane for walking.  (*Id.*)  He indicated Plaintiff could rarely lift less than 10 lbs. and should never lift 10 lbs. or more.  (*Id.* at 30)  Dr. Schroeder opined Plaintiff could rarely twist, stoop, bend, and climb stairs; and she could never crouch, squat, or climb ladders.  (*Id.*)  He believed Plaintiff's impairments caused both good and bad days, and she was likely to be absent from any work more than four days per month due to her impairments.  (*Id.*)

### a.    The ALJ's evaluation of the statement

Addressing the medical record, the ALJ indicated she gave "limited weight to the chiropractor's

---

[3] The ALJ and Plaintiff referred to her chiropractor with the title of "Doctor," which the Court has adopted. However, as discussed below, the Regulations distinguished between chiropractors and medical doctors.

assessment because the limitations appear to be overstated and are not consistent with the examination findings documenting some stiffness, pain, and decreased range of motion, but the claimant has not been noted to be in acute distress during examinations." (Doc. 14-3 at 34)  In addition, the ALJ noted: "She has been able to manage her personal care, tend to her basic needs, prepare simple meals, perform household chores, drive, and travel.  Furthermore, the records contain contradictory opinions that are more consistent with the weight of the evidence and, therefore, more persuasive." (*Id.*)

Plaintiff argues that the ALJ erred in rejecting the limitations identified by Dr. Schroeder and giving "deference to the opinions of the non-examining state agency [r]eviewer." (Doc. 22 at 27; *see also id.* at 22-30)  On the other hand, the Commissioner asserts "the ALJ properly weighed Mr. Schroeder's form." (Doc. 23 at 8, emphasis omitted)

### b.        Status as an "other source"

As an initial matter, although the ALJ referred to Plaintiff's chiropractor with the title of "Doctor," Plaintiff acknowledges that the applicable Regulations distinguished between individuals with a *chiropractic* degree and individuals with a *medical* degree.  (*See* Doc. 22 at 22)  Under the Regulations, "a chiropractor… is not an acceptable medical source but [was] instead classified as an 'other source.'"  *Cachu v. Colvin*, 2015 WL 5232524 at*4  (E.D. Cal. Sept. 4, 2015), citing 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

Opinions from "other sources," such as chiropractors, "are not entitled to the same deference" as those of a physician.  *Revels*, 874 F.3d at 655.  Opinions of "other sources" "may be discounted [if] the ALJ provides reasons germane to each source." *Fields v. Comm'r of Soc. Sec*., 2019 WL 3003992 at *3 (E.D. Cal. July 10, 2019) (citing *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017)); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (opinions from other sources may be rejected with germane reasons).  Thus, the Ninth Circuit explained that an ALJ is "required to take into account evidence from [a claimant's] chiropractor unless he or she expressly determined to disregard such testimony and gave reasons for doing so."  *Kus v. Astrue*, 275 Fed. App'x 555, 556 (9th Cir. 2008) (internal quotation marks, citation omitted).

### c.        Plaintiff's level of activity

The Ninth Circuit determined an ALJ may reject an opinion from an "other source" or lay

witness when the restrictions identified appear to be inconsistent with the claimant's level of activity. *See Valentine v. Comm'r of SSA*, 574 F.3d 685, 694 (9th Cir. 2009); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (inconsistency with a claimant's activities a germane reason).

Notably, the Ninth Circuit previously found the ALJ did not identify a germane reason for rejecting the opinion of an "other" medical source when the claimant engaged in limited activities. *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017).  In *Popa*, the ALJ noted the claimant attended church, shopped for groceries, and watched television. *Id.* at 906.  However, the Court found these activities "were not consistent with regularly attending a full-time job." *Id.*  Thus, the Court determined Popa's level of activity was not a germane reason for rejecting the limitations identified by the treating nurse practitioner. *Id.* at 907.

In rejecting the limitations identified by Dr. Schroeder, the ALJ noted that Plaintiff was "able to manage her personal care, tend to her basic needs, prepare simple meals, perform household chores, drive, and travel."  (Doc. 14-3 at 34)  However, as discussed above, the ALJ failed to acknowledge the difficulty Plaintiff experienced with performing household chores.  In addition, the ALJ fails to explain how any of the activities identified are inconsistent with the limitations identified.  For example, the ALJ made no findings that to "prepare simple meals," Plaintiff needed to stand more than ten minutes at a time.  Similarly, the ALJ did not explain how the activities demonstrate an ability to lift more than ten pounds, or an ability to sit for extended periods without needing to stand or shift positions at will.  Because the ALJ has not explained the conflict between Plaintiff's level of activity and the findings of Dr. Schroeder—or find these activities are consistent with the ability to perform full-time work— this is not a germane reason for rejecting the opinion. *See Popa*, 872 F.3d at 906-07.

### d.   Inconsistency with the record

The Ninth Circuit determined that "inconsistency with other medical records is a germane reason to reject the opinion of a non-acceptable medical source." *Green v. Berryhill*, 731 Fed. App'x. 596, 599 (9th Cir. 2018), citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Bayliss v. Barnhart*, 427 F.3d 1211, 1211 (9th Cir. 2005) ("inconsistency with medical evidence is one [germane] reason").  To reject an opinion as inconsistent with the medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  The ALJ must "set[] out a

14

detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

The ALJ found the limitations identified by Dr. Schroeder were "overstated and are not consistent with the examination findings."  (Doc. 14 at 34)  Notably, the ALJ acknowledged findings in the record included "some stiffness, pain, and decreased range of motion."  (*Id.*)  However, the ALJ did not identify any specific examination findings—or even specific exhibits in the record— that she believed conflicted with the limitations identified.  This failure to identify the conflicting evidence in the record is an error, as courts will not "comb the administrative record to find specific conflicts." *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see also Wilson v. Berryhill*, 2019 WL 384960 at *7 n. 11 (S.D. Al. Jan. 30, 2019) (finding a "summary citation to two exhibits, collectively consisting of over seventy pages of medical records, is insufficient, as the Court is unable to determine what inconsistencies the ALJ relied on"). For example, the Northern District explained an ALJ erred in rejecting the limitations identified by a nurse—also an "other source"—without identifying specific findings in the cited exhibits because the court could not meaningfully review the evidence.  *Leroux v. Berryhill*, 2018 WL 1258206 at*12 (N.D. Cal. Mar. 12, 2018) (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009)).  Here, the medical record before the ALJ was nearly 800 pages long, and the Court is unable to speculate as to which specific objective findings the ALJ believed were inconsistent with the limitations identified by Dr. Schroeder.

The ALJ's analysis of the opinion of Dr. Schroeder fails to "achieve the level of specificity" that the Ninth Circuit requires. *Embrey*, 849 F.2d at 421-22; *see also Leroux*, 2018 WL 1258206 at *12 ("The Court will not wade through these extensive records to try to identify whatever support the ALJ may have been referencing when he rejected [the nurse's] opinion. Such speculation is not appropriate upon judicial review.").  Consequently, the purported inconsistencies do not support the ALJ's rejection of limitations identified by Plaintiff's chiropractor.

> e.      Presentation on examination and lack of "acute distress"

Plaintiff asserts the ALJ erred in rejecting the physical limitations identified by Dr. Schroeder on the grounds that she did not appear in "acute distress during examinations."  (Doc. 22 at 24) Plaintiff observes that District Courts determined this was not a basis for rejecting the limitations

1  identified.  (*Id.*, citing, e.g., *Toni D. v. Saul*, 2020 WL 1923161 (D. Ore. 2020))  On the other hand, the

2  Commissioner argues that the lack of acute distress was properly considered by the ALJ.  (Doc. 23 at 9

3  n. 4, citing *Dattilo v. Berryhill*, 773 Fed. App'x. 878, 881 (9th Cir. 2019); *Noah v. Berryhill*, 732 Fed.

4  App'x. 520, 522 (9th Cir. 2018); *Rangrej v. Berryhill*, 728 Fed. App'x. 612, 614 (9th Cir. 2018);

5  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

6        Significantly, in *Dattilo*, *Noah*, and *Rangrej*, the Ninth Circuit indicated the claimant's lack of

7  "acute distress" during examination was a proper consideration in evaluating the claimant's credibility.

8  *See Dattilo*, 773 Fed. App'x. at 881 (finding the ALJ "properly discredited" the subjective complaints

9  by "highlighting the discrepancy between subjective testimony and objective medical evidence, which

10  included "no evidence of radiating pain, intact sensation in upper extremities, normal motor strength,

11  normal gait, and no acute distress"); *Noah*, 732 Fed. App'x. at 522 (holding "[t]he ALJ  did not err in

12  discounting Noah's testimony" based upon inconsistencies with the record, which included findings that

13  "Noah was in no acute distress, appeared well nourished, and displayed a normal mood over a series of

14  appointments spanning several years"); *Rangrej*, 728 Fed. App'x. at 614 (finding the ALJ identified

15  inconsistencies with the record "to conclude that Rangrej's testimony was not credible," including the

16  fact that Rangrej did not have "acute distress," "was not receptive to recommended physical therapy

17  and pain management therapy," and "declined to meet with pain management specialists").  Thus, each

18  of these cases must be distinguished from the matter now before the Court, where the issue is not a

19  credibility determination.

20        In *Rollins*, the claimant's presentation on examination was evidence considered by the Court in

21  evaluating the ALJ's rejection of a statement from a treating physician. The Ninth Circuit indicated an

22  "ALJ provided adequate reasons" for not adopting limitations where the ALJ "noted that on October 4,

23  1994, Dr. Young claimed that Rollins was disabled, despite the facts that (1) Dr. Young also claimed

24  that Rollins had improved since her original examination on July 25, 1994, and (2) Dr. Young's

25  findings at the July 25 examination indicated that Rollins was not disabled."  *Rollins*, 261 F.3d at 856.

26  The Court explained:

27        These reasons are supported by substantial evidence. On July 25, Dr. Young described
      Rollins as a "well developed, well nourished middle aged female in no acute distress"

28        and prescribed a conservative course of treatment, including a recommendation to "avoid
      strenuous activities." These are not the sort of description and recommendations one

16

would expect to accompany a finding that Rollins was totally disabled under the Act.

In addition, the ALJ noted that some of Dr. Young's recommendations were so extreme as to be implausible and were not supported by any findings made by any doctor, including Dr. Young. In particular, Dr. Young claimed that Rollins' condition prevented her from engaging in any bending, stooping, crouching, crawling, kneeling, climbing, and balancing, and also indicated that Rollins should never be exposed to any smoke, fumes, dust, temperature extremes, humidity, vibrations, or noise, among other things. There is no indication in the record what the basis for these restrictions might be, and Rollins herself has never claimed to have any problems with many of the conditions and activities that Dr. Young instructed her to avoid.

*Id.* Thus, the presentation without "acute distress" was one piece of evidence considered by the Court to determine the ALJ's decision was supported by substantial evidence. However, here the ALJ appears to rely *only* upon the observation that Plaintiff was not "in acute distress during examinations," while also acknowledging that Plaintiff exhibited "stiffness, pain, and decreased range of motion." (Doc. 14-3 at 34)

Importantly, the ALJ has not cited any evidence in the medical record to support her finding that Plaintiff was not in "acute distress" on examination. (*See* Doc. 14-3 at 34) In fact, Dr. Schroeder addressed the difference between "acute" pain and "chronic pain," noting Plaintiff's "condition [was] chronic" due to the duration. (*See, e.g.*, Doc. 14-11 at 7, 10, 13, 37, 42, 46) However, he also found Plaintiff experienced "acute exacerbation of [her] chronic condition" "with increased pain and decreased function," at which time Plaintiff demonstrated positive straight leg raise test, limping, "[g]eneral rigidity of the left lower extremity," and decreased sensation. (*Id.* at 40-41, 53)

Even if the ALJ identified evidence in the record demonstrating Plaintiff was not in "acute distress," the ALJ also has not explained how her presentation was inconsistent with the limitations identified by the chiropractor. Thus, the ALJ's unexplained findings do not support the rejection of Dr. Schroeder's limitations. *See M.D.B. v. Berryhill*, 2020 WL 4051863 at *14-15 (N.D. Cal. July 20, 2020) ("the lack of 'acute distress'" was not a proper basis for rejecting limitations identified by both a physician and "other source," in part because the ALJ did not explain why "no acute distress" was inconsistent with the opinions); *see also Huynh v. Astrue*, 164 Soc. Sec. Rep. Service 509, 2011 WL 1464835 at *4 (C.D. Cal. Apr. 15, 2020) ("the fact that plaintiff presented… as well nourished and developed, and in no acute distress, does not constitute a specific and legitimate reason for rejecting... [the] opinion as to plaintiff's functional limitations").

1
2.      Opinions of Dr. John Devor

2        John Devor, M.D., examined Plaintiff in the capacity of an Agreed Medical Examiner related to

3  her Worker's Compensation claim on February 8, 2016.  (Doc. 14-21 at 12)  Dr. Devor observed that

4  Plaintiff had "an antalgic gait favoring her right leg to a slight degree," and walked "on her toes and

5  heels somewhat awkwardly."  (*Id.* at 16)  He found Plaintiff limited "squatting to where the knees

6  [were] flexed 90 degrees."  (*Id.*)  In addition, Dr. Devor determined Plaintiff had "[n]o sensory deficit"

7  and "[n]o motor deficit" in her legs.  (*Id.* at 17)  He took imaging of Plaintiff's knees, and found

8  "complete loss of medial joint space bilaterally" and "suggestion of early degenerative change in the

9  patellofemoral joints."  (*Id.* at 18-19)  In addition, Dr. Devor believed Plaintiff's range of motion in her

10  knees was "redistricted consistent with advanced degenerative arthritis."  (*Id.* at 19)  He noted Plaintiff

11  also "demonstrate[d] slightly limited lumbar range of motion."  (*Id.*)  Dr. Devor gave the following

12  "vocational status":

13            Ms. Caudel needs to be restricted from heavy lifting, prolonged standing, and walking
             and jumping, kneeling, squatting, and climbing to minimize problems with her knees.
14            As long as she avoids heavy lifting, she will adequately protect her low back.  Her work
             restrictions are probably uncongenial with her duties at Walmart.  Therefore Ms. Caudel
15            is eligible for supplemental job replacement benefits.

16  (*Id.* at 21)  After reviewing Plaintiff's available medical records, Dr. Devor issued a supplemental

17  report in which he indicated the records provided "no basis upon which to change or reconsider any of

18  [his] previously expressed opinions."  (*Id.* at 8)

19            a.      The ALJ's evaluation of the statement

20        The ALJ summarized the vocational findings of Dr. Devor, and explained the weight given to

21  the opinion as follows:

22            Not only does this medical source statement fail to quantify terms such as "heavy" and
             "prolonged," the examiner uses a Worker's Compensation standard to make
23            conclusions.  As the Worker's Compensation evaluation process and criteria differ from
             the Social Security evaluation of disability, I cannot draw an appropriate limitation
24            from this evaluation.  Therefore, I give little weight to Dr. Devor's conclusion.

25  (Doc. 14-3 at 34)  Plaintiff contends the ALJ erred in her analysis, and did not identify "a 'specific and

26  legitimate' reason" to reject the conclusions of Dr. Devor.  (Doc. 22 at 29)

27            b.      Evaluation of a workers' compensation opinion

28        The Ninth Circuit acknowledged that "the terms of art in used in the California workers'

18

compensation guidelines are not equivalent to Social Security disability terminology." *Booth v. Barnhart*, 181 F.Supp.2d 1099, 1104 (C.D. Cal. 2002), citing *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988)). For example, the Court observed:

> Under the California workers' compensation system, a claimant incapable of performing "heavy" work may be capable of performing "light," ["]semi-sedentary" or "sedentary" work. None of these three categories, however, is based on strength. Rather, they turn on whether a claimant sits, stands, or walks for most of the day. Each entails a "minimum of demands for physical effort." Schedule for Rating Permanent Disabilities, Guidelines for Work Capacity, 1-A (Labor Code of the State of California).
>
> The categories of work under the Social Security disability scheme are measured quite differently. They are differentiated primarily by step increases in lifting capacities.

*Desrosiers*, 846 F.2d at 576.

Despite the differences in terminology, the ALJ has responsibility to address the findings in a workers' compensation opinion and its "corresponding Social Security terminology." *Ray v. Saul*, 2019 WL 3767454 at *3 (E.D. Cal. Aug. 8, 2019), quoting *Perez v. Astrue*, 831 F.Supp.2d 1168, 1177 (C.D. Cal. 2011); *Booth*, 181 F.Supp.2d at 1105. Toward this end, an "ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that [she] uses to evaluate medical findings in reports made in the first instance for the Social Security claim, unless there is some reasonable basis to believe a particular report or finding is not entitled to comparable weight." *Ray*, 2019 WL 3767454 at*3, quoting *Coria v. Heckler*, 750 F.2d 245, 248 (3rd Cir. 1984). An ALJ's evaluation of the medical opinion need not contain an explicit 'translation,' but it should indicate that the ALJ recognized the differences in terminology and took those differences into account in the evaluation." *Booth*, 181 F.Supp.2d at 1106.

Here, the ALJ clearly acknowledged the distinction between the worker's compensation guidelines and Social Security terminology. (Doc. 14-3 at 34) However, the ALJ did not translate restrictions identified by Dr. Devor into functional limitations under Social Security terminology, and instead rejected all limitations due to the difference. (*See id.*) The ALJ also did not acknowledge any of the objective findings from Dr. Devor's examination, and instead only summarized Plaintiff's statements to Dr. Devor. (*See id.* at 31, 34) Thus, the ALJ erred both in failing to properly address the

findings of Dr. Devor and by making "no effort to translate [the] opinion into corresponding Social Security terminology." *See Ray*, 2019 WL 3767454 at *3; *Gonzalez v. Comm'r of SSA*, 2018 WL 1426655, at *7 (N.D. Cal. Mar. 22, 2018) ("Simply because medical evidence was derived from a worker's compensation proceeding does not mean the ALJ is not required to review that medical evidence and explain why such evidence should be afforded particular weight.").

### 3.    Conclusion

The ALJ failed to identify germane reasons supported by the record for rejecting the functional limitations identified by Plaintiff's treating chiropractor.  Similarly, the ALJ erred in her analysis of the medical opinion from Dr. Devor, and did not identify specific and legitimate reasons for rejecting the limitations, which included a restriction "from heavy lifting, prolonged sitting, and walking and jumping, and kneeling, squatting, and climbing."  (*See* Doc. 14-3 at 34)  Thus, the ALJ erred in evaluating the medical record.

## C.    Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify legally sufficient reasons to reject the limitations identified by Dr. Schroeder and Dr. Devor.  Because the ALJ failed to resolve the conflicts in the record regarding Plaintiff's functional limitations, the matter should be remanded for the ALJ to re-evaluate the medical

evidence. *See Moisa*, 367 F.3d at 886. In addition, the matter may be remanded further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony.  *See, e.g., Bunnell*, 947 F.2d at 348; *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further proceedings related to the adverse credibility determination).  Thus, the Court finds remand is appropriate for an ALJ to reconsider the medical evidence and Plaintiff's subjective complaints.

## **CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ erred in evaluating the medical record and Plaintiff's subjective complaints and the ALJ's decision cannot be upheld.  *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1.     Plaintiff's appeal of the administrative decision (Doc. 22) is **GRANTED**;

2.     The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3.     The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Laquitta Ann Caudel, and against Defendant Andrew Saul, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   __March 15, 2021__                    ____ **/s/ Jennifer L. Thurston**
                                                                      UNITED STATES MAGISTRATE JUDGE